UNITED STATES *v.* LAWRENCE (No. 2100).[1]

ENTERED VALUE MINIMUM AS TO BOTH RATE AND AMOUNT.

The provision of paragraph I, Section III, tariff act of 1913, that duty shall not be assessed upon an amount less than the entered value applies to the *rate* of duty where the value of the merchandise governs its classification. Paragraphs 322 and 567, tariff act of 1913, as amended by the special revenue act of September 8, 1916 (T. D. 36667), levy a duty and admit free of duty, respectively, certain printing paper if valued above or not above 5 cents per pound. Such paper was invoiced and entered at more than 5 cents per pound but appraised at less. The provision of paragraph I, Section III, tariff act of 1913, that duty shall not be assessed upon an amount less than the entered value compels its dutiability under paragraph 322 and prevents its entry free of duty under paragraph 567.

United States Court of Customs Appeals, December 14, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44126.

[Reversed.]

*Wm. W. Hoppin*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

*B. R. Lawrence* for appellee.

[Oral argument Oct. 6, 1921, by Mr. Hoppin.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal presents a question as to the proper classification for duty of certain newsprint paper imported from Canada.

Under the special revenue act of September 8, 1916 (T. D. 36667), paragraphs 322 and 567 of the tariff act of 1913 were amended so as to read in part as follows:

322. Printing paper (other than paper commercially known as handmade or machine handmade paper, japan paper, and imitation japan paper by whatever name known), unsized, sized, or glued, suitable for the printing of books and newspapers, but not for covers or bindings, not specially provided for in this section, valued above 5 cents per pound, twelve per centum ad valorem.

567. (Free list.) Printing paper (other than paper commercially known as handmade or machine handmade paper, japan paper, and imitation japan paper by what-

---

[1] T. D. 38967.

ever name known), unsized, sized, or glued, suitable for the printing of books and newspapers, but not for covers or bindings, not specially provided for in this section, valued at not above 5 cents per pound.

It is conceded in this case that the present merchandise is printing paper of the character described in these paragraphs and that the importations are governed by the foregoing provisions. Accordingly, the merchandise is entitled to free entry if valued at 5 cents per pound or less, but is subject to duty at 12 per cent ad valorem if valued at more than 5 cents per pound.

It appears without dispute that the paper in question was invoiced at a price exceeding 5 cents per pound, also that the importer regularly entered it for duty at a valuation exceeding 5 cents per pound. These facts, if taken alone, would make the importation dutiable as aforesaid at not less than 12 per cent ad valorem.

But in due course the appraiser officially appraised the merchandise and returned it at a valuation of only 4 cents per pound, which valuation, if taken alone, would entitle the merchandise to entry free of duty. No appeal was taken from the appraisement.

Upon these facts the collector held that the entered value of the merchandise, being in excess of the appraised value thereof, must govern and control the classification for duty and also the rate of assessment of the merchandise, as well as indicate the dutiable valuation upon which the appropriate rate of duty should be assessed. Accordingly, since the entered value was more than 5 cents per pound, the merchandise was held to be dutiable at the rate of 12 per cent ad valorem, and this rate was assessed upon the dutiable valuation stated in the entry.

The collector based this action upon the following provision contained in paragraph I, Section III, tariff act of 1913:

The duty shall not, however, be assessed in any case upon an amount less than the entered value. * * *

The importer protested against the assessment, claiming free entry for the merchandise because of the fact that the appraised valuation thereof was less than 5 cents per pound. The protest was submitted to the Board of General Appraisers, and the board sustained it. From that decision the Government appeals.

It is conceded by the importer that under paragraph I, supra, duty may not be assessed upon a dutiable valuation less than the entered value of merchandise, but the importer claims that the present question "does not involve the assessment of duty upon a value, but the ascertainment of a rate of duty, or a determination of the dutiable character of the merchandise." And that "when the rate shall be determined it must be applied to the actual foreign market value, but on an amount not less than the entered value." Pursuing this line of argument, the importer claims that the "de-

termination of the rate, which in the instant case is 'free,' is a separate and distinct operation from the application of the ascertained rate to the dutiable value."

According, therefore, to the importer's interpretation of paragraph I, supra, the entered value of the merchandise in this case simply became a minimum principal upon which duty should be computed in case it was found that the merchandise was liable to ad valorem assessment, but that inasmuch as the merchandise was appraised at only 4 cents per pound it was not liable to assessment, but was expressly entitled to free entry, consequently that no actual assessment at all could be made upon it, whatever might be its entered value. It is of course apparent that this contention has the effect of making the actual classification for duty of the merchandise to depend upon its appraised valuation rather than upon its entered value.

The question therefore arises whether in cases like this, wherein the rate or classification for duty of merchandise is made to depend upon its value, and the entered value thereof is higher than its appraised value, the collector shall ascertain the dutiable status and applicable rate of duty of the importation according to the entered value thereof, or according to the appraised value, in which latter case the entered value would serve merely as a minimum valuation upon which duty otherwise ascertained should be computed in the assessment.

The question which is thus submitted by the importer has been conclusively answered by former adjudications, and a citation of these will sufficiently serve the purpose of this decision.

The first case to which we refer is Kimball *v.* The Collector, 10 Wall., 436 (Dec., 1870), which arose under the tariff law of March 3, 1857. That act levied a duty of 24 per cent ad valorem upon unmanufactured sheep's wool, at the same time providing that such wool "if of the value of 20 cents per pound or less at the port of exportation * * * shall be exempt from duty, and entitled to free entry * * *." By another act of the same date Congress enacted the familiar proviso in the following words: "That under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value, any law of Congress to the. contrary notwithstanding." The importation in question consisted of unmanufactured wool which accordingly was entitled to free entry if valued at 20 cents per pound or less at the port of exportation, but which was liable to assessment if of greater value. The wool was invoiced and entered at a value exceeding 20 cents per pound. The importers however, immediately claimed that the wool was in fact worth less than 20 cents per pound, the price of wool having declined at the port of exportation after the purchase and prior to the exportation of this shipment. The appraiser took the view that he had no

authority to appraise the importation at less than its invoice and entered value, nevertheless he "unofficially" notified the collector that the market value of the wool at the port of exportation was less than 20 cents per pound. The case was submitted to the court upon the assumption that the actual market value of the wool at the port of exportation was in fact less than 20 cents per pound. This plainly appears from the following statement of the issue (p. 439):

> The court below gave judgment for the collector, and the importer brought the case here; the question, and the only question, being whether, taking in consideration the language of the first statute of 1857, and also that of the proviso to the other act of the same day, the collector should have allowed this wool to be entered free, *where the price stated in the invoice was more than 20 cents, and its actual value was less.* [Italics ours.]

Upon the question thus submitted the Supreme Court held that "the invoice and entered value (which in this case was the actual cost), *and not any lower market value of the goods at the date and place of exportation, is the value upon which the duty is to be assessed.*" [Italics ours.]

It should be observed that in the foregoing case, as decided by the court, the actual dutiability of the merchandise and not simply the valuation thereof for assessment, depended upon whether the invoice and entered value or the actual market value of the merchandise should control; and that the court held that the classification for duty of the goods should follow the entered value, "and not any lower market value of the goods at the date and place of exportation."

It is interesting to note that the argument in the foregoing case followed substantially the line now presented by the respective parties in this case. According to the official report the importers argued in part as follows:

> The first statute provides a way to determine whether an article is free or dutiable. If it is found to be free when tried by this test, then the proviso does not apply, for there is no duty to be assessed. If, on the other hand, the wool is found when tested by the first statute to be dutiable, then the last statute applies and says upon what that duty shall be assessed.

In answer to that argument the Government contended as follows:

> There is no authority for the idea of the other side, of making one appraisement for the purpose of determining if merchandise be exempt from duty, and if it is found to be dutiable, then of making another appraisement for the purpose of determining the value upon which ad valorem duties are to be assessed, and it would seem to follow that the invoice must be as binding in the one case as the other.

Upon these conflicting claims the court directly held as aforesaid with the Government, holding that the merchandise should be classified for duty according to the valuation thereof as set out in the invoice and entry.

In the subsequent case of Saxonville Mills *v.* Russell, 116 U. S., 13 (Oct., 1885), the Supreme Court distinctly adhered to the foregoing rule. The merchandise was wool which was dutiable at 3 cents per pound if valued at 12 cents per pound or less, but dutiable at 6 cents per pound if valued at more than 12 cents per pound. The statute in force contained the familiar proviso that "duty shall in no case be assessed upon an amount less than the invoice or entered value." The wool was invoiced and entered at a value above 12 cents per pound, though it was in fact worth less than 12 cents. The appraiser, as in the former case, reported the wool to be "dutiable at invoice value," believing that he had no legal right to appraise it at less than the invoice value, at the same time believing it to be worth less. The collector assessed duty at the higher rate, and the court sustained the assessment. This decision was not predicated upon the action of the appraiser in appraising the wool at the invoice value, for on the contrary it was assumed in the decision that the true market value of the wool was less than 12 cents per pound, the court holding nevertheless that the merchandise should be assessed at the rate of duty applicable to the invoiced and entered value. In this behalf the court said:

As the value of the wool in question, at the last port or place whence exported into the United States, * * * was less than twelve cents per pound, under these provisions of law, standing alone, it would be subject to a duty of but three cents per pound.

\* \* \* \* \* \* \*

In our opinion the rule declared in the proviso in both these sections, that the duty shall not be assessed upon an amount less than the invoice or entered value, is applicable to the valuation of wools, for the purpose of determining the rate of duty chargeable upon them under the acts of 1867 and 1872, and was therefore properly applied in the present case. It is quite true that the act of 1867 provides a different classification of wools, and imposes a specific and not an ad valorem duty; but, nevertheless, the duty varies according to the value per pound of the article, and a valuation is therefore as necessary to the ascertainment of the rate of duty as if it were strictly an ad valorem duty.

It is familiar history that the proviso which was construed and enforced in the case of Kimball *v.* The Collector, supra, whereby "under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value," has been continued in force by repeated reenactments in almost identical language ever since the date of that decision, the changes of phraseology in the meantime having no relation to the present issue. In the present act, as above stated, the provision reads, "the duty shall not, however, be assessed in any case upon an amount less than the entered value."

The rule announced by the Supreme Court in the foregoing decisions has been followed by the Board of General Appraisers in at least three reported cases.

In the Wyman & Co. case, T. D. 23111, G. A. 4940, June, 1901, the merchandise in question consisted of samples of linen damask in books or covers. The importers claimed that these possessed no commercial value whatever, and demanded free entry therefor under article 561 of the Customs Regulations of 1899 and a department circular, T. D. 18377, instructing collectors to admit to free entry samples returned by the appraiser as of no commercial value, although specified and charged for in the invoice. The local appraiser returned the articles as "samples of no commercial value;" nevertheless they were invoiced as of the value of more than £12. The collector assessed duty on the invoice value, under the provisions of section 7, tariff act of June 10, 1890, requiring that duty shall not be assessed in any case upon an amount less than the invoice or entered value.

The board overruled a protest against that action, saying, by Somerville, G. A.:

> This is undoubtedly a correct exposition of the law. Moreover, it seems that appraising officers have no right to find a lower value for imported merchandise than that stated in the invoice or entry. (Kimball v. Collector, 10 Wall., 436, 453.) It was therefore illegal for the local appraiser to return the goods as of no commercial value in defiance of the values set forth in the invoice, and the collector would not have been justified in disregarding that invoice value and admitting the goods to free entry.

See also board decisions T. D. 29557, G. A. 6867, reported February, 1909, and T. D. 25764, G. A. 5845, reported November, 1904. In the latter case the board in part said:

> Section 7 of the customs administrative act of June 10, 1890, provides that "duty shall not * * * be assessed in any case upon an amount less than the invoice or entered value." Such entered value, when higher than the invoice, is not only the minimum value upon which ad valorem duties must be assessed but, as appears to have been settled, will determine the classification of the goods, rather than any lower invoice or appraised value, when the classification is dependent upon or regulated in any manner by their value. Kimball v. Collector (10 Wall., 436); Roebling v. United States (77 Fed., 601).

It therefore appears that from the time of the Kimball decision in 1870 up to the date of the decision of the board now upon appeal the unbroken line of decisions has been against the present contention of the importers, and it may safely be assumed that the administrative practice has conformed to the rule thus recognized. In the meantime Congress has at intervals reenacted the proviso in question in terms which, in so far as the present question is concerned, are identical with those thus construed. It is fair to conclude that thereby Congress intended to approve the interpretation of the statute as thus published.

See also the case of Roebling v. United States (77 Fed., 601, 602), wherein Wheeler, Judge, remarked, "there can be no issue between

the invoice value of merchandise and any value below; " and Vantine *v.* United States (91 Fed., 519).

Upon the general subject see Ullman *v.* United States (1 Ct. Cust. Appls., 61; T. D. 31032); United States *v.* Bennett (2 Ct. Cust. Appls., 249; T. D. 31975); Daloz *v.* United States (171 Fed., 275); Ballard *v.* Thomas (19 How., 382; T. D. 23111, G. A. 4940).

In conformity with the foregoing authorities, therefore, we hold against the decision of the board in this case. It is accordingly reversed, and the case is remanded for judgment in accordance herewith.

*Reversed.*

### CONCURRING OPINION.

BARBER, Judge: I concur in the reversal of the judgment below only because of what I regard as the controlling effect of the rulings of the Supreme Court in the cases cited in the opinion. The facts in the case of Kimball *v.* The Collector differ from those here.

There the appraisers appraised the importation at the entered value, and declined to appraise it at the value which would entitle it to free entry, although unofficially they gave their opinion that its value was not such as to make it dutiable. Here it has been officially appraised at a value entitling it to free entry.

Again, the two statutes under consideration in that case, as appears from the court's opinion, the one giving free entry to merchandise of the character there under consideration, and the other providing that duty should not be assessed upon less than the invoiced or entered value, were concurrently enacted, while here the act giving free entry to printing paper like this importation was enacted long after the provision that duty should in no case be taken on less than the entered value.

The well-known shortage of printing paper at the time of the later statute makes obvious the purpose of Congress therein. Its effect was to divide printing paper into two classes, one dutiable, the other free, and the line of demarcation between the two was a prescribed value per pound. It has been officially determined that this importation was in the class entitled to free entry, and no wrong whatever is imputed to the importer. I take it, if he had stated the value to be 4 cents per pound, which was that ascertained and fixed by the appraiser and reported to the collector, there would be no question that the merchandise would have been entitled to free entry.

However, the arguments presented to the Supreme Court in the Kimball case, and the ruling thereon, were such that I regard that case as controlling this. I would hope, however, that if this case were before that court the doctrine of the Kimball case would be disapproved.

The case of Saxonville Mills *v.* Russell, referred to, is distinguishable from the case here, because there the importation was dutiable in any event.

In order, however, that what I regard as the flagrant injustice of this case be called to the attention of whomsoever may be interested therein, I recapitulate.

The entry papers claim the merchandise to be free of duty, citing T. D. 36667, title 6, which contains the statute allowing free entry to printing paper valued at not more than 5 cents per pound. Obviously the question of value per pound must be first passed upon by the appraiser. The statement in the entry that it was valued at more than 5 cents per pound, however it may be regarded, ought not to be deemed to control or defeat the claim that it was entitled to free entry, accompanied by a reference to the appropriate paragraph in the free list which established that right.

This printing paper, if legally found to be valued at less than 5 cents per pound, was free of duty, and it has been so found. It seems clear that the provision in paragraph I, Section III, that duty should not be assessed in any case upon an amount less than the entered value can and should be held to relate *only* to merchandise that is in fact dutiable. This is not.

In any event, I see no justification for penalizing the importer in this case, and no excuse for the United States Government to take duty upon merchandise which the lawmaking body has declared to be entitled to free entry.

However, while I am of opinion that in justice the judgment below should be affirmed, yet, by reason of what I regard as the controlling effect of the opinion of the Supreme Court, I feel constrained to and do *concur.*

### CONCURRING OPINION.

SMITH, Judge: It is the duty of the collector to classify goods and the duty of the appraiser to determine their value. When therefore it comes to the classification of goods and such classification is determined under the statute by their value, it seems to me that the collector must accept the appraised or official value for classification purposes and classify the goods accordingly. If such classification brings the merchandise within the terms of the free list, the merchandise should be admitted free, but if the classification according to their appraised value subjects the merchandise to duty, then in compliance with the express mandate of paragraph I of Section XII, *the rate of duty* should be applied to the entered, not the appraised, value.

The decisions of the Supreme Court cited by Judge Martin definitely settle, however, that the *entered value* determines classification, and for that reason I concur.